[No. H024757. Sixth Dist. Feb. 9, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DERIC LAMAR LITTLE, Defendant and Appellant.

COUNSEL

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WUNDERLICH, J.—**

## I.  Statement of the Case

A jury convicted defendant Deric Lamar Little of possessing more than 57 grams of methamphetamine for sale, misdemeanor child endangerment, misdemeanor using or being under the influence of a controlled substance, and misdemeanor possession of drug paraphernalia.[1] (Health & Saf. Code, §§ 11378, 11550, subd. (a), & 11364; Pen. Code, §§ 273a, subd. (b), & 1203.073, subd. (b)(2).) Thereafter, the court found true allegations that defendant had four prior felony convictions for possession for sale or transporting methamphetamine. (Pen. Code, § 1203.07, subd. (a)(11); Health & Saf. Code, § 11370.2, subd. (c).) The court imposed the three-year aggravated term for possession for sale, a consecutive three-year enhancement for one of the prior convictions, and concurrent 90-day jail terms for the misdemeanors. The court dismissed the three remaining prior convictions in furtherance of justice. (See Pen. Code, § 1385.)

---

[1] Defendant was tried along with codefendant Aurora Martha Ochoa, who was found guilty of the same offenses.

On appeal from the judgment, defendant claims there is insufficient evidence to support his misdemeanor conviction for child endangerment. He also challenges his misdemeanor conviction for being under the influence on the ground that the court accepted a stipulation that was tantamount to a guilty plea but did not advise him of his constitutional rights and obtain waivers before accepting it.

We find merit in defendant's second claim and reverse his misdemeanor conviction for being under the influence of a controlled substance.

## II.    Facts [2]

Around 8:00 p.m., on July 21, 2001, several police officers from the San Jose Police Department, including Officers Kevin Sebree, Steve Spillman, and Fred Kotto, entered defendant's residence on Santa Rosa Drive in San Jose to conduct a search. Sebree saw a woman in the hallway, who was searched and found in possession of a bindle of methamphetamine. In a back bedroom, the officers found defendant and Ochoa; glass pipes used for smoking drugs; an electronic scale, on which there was a white powdery substance; packaging material; two bags containing over $900 in cash; and a backpack containing 70 grams of methamphetamine. There was also a television monitor in the room, which, according to Sebree, displayed a live picture of what was happening in the living room and at the front door at the time of the search. An expert concerning criminal possession, use, and sale of drugs testified that the 70 grams of methamphetamine found by the police were possessed for sale.

Sebree testified that upon entering the residence, he was overcome by a smell of animal feces and rotten food. Likewise Spillman testified that the house was filthy and smelled of animal feces. He saw dirt, cobwebs, insects, and cockroaches everywhere. Animals were running around. And garbage was piled in almost every room. In the master bedroom, Spillman found defendant and Ochoa's infant daughter, who appeared to be six months to one year old. She was lying unsecured in the middle of a bed, which was around three feet high. Spillman noticed that the bed lacked a railing or restraints to prevent the child from crawling or rolling off the edge. Concerned that the child might fall and injure herself, Spillman called for help and removed the child. In the bedroom, there was also some sort of video device aimed toward the bed.[3]

---

[2] Given the issues raised on appeal, we focus our factual summary on the evidence supporting the charge of child endangerment.

[3] During closing argument, defense counsel commented on two photographs of the master bedroom that showed a "little gizmo" with a lens facing toward the bed.

## III.   Sufficiency of the Evidence

Defendant contends there is insufficient evidence to support a conviction under Penal Code section 273a, subdivision (b) for child endangerment. We disagree.

When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the verdict, drawing all inferences that reasonably support it, and determine whether it contains substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a trier of fact could rationally find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].) In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses. (See *People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) Moreover, because it is the jury, not the reviewing court, that must be convinced of the defendant's guilt beyond a reasonable doubt, we are bound to sustain a conviction that is supported by only circumstantial evidence, even if that evidence is also reasonably susceptible of an interpretation that suggests innocence. (*People v. Bean* (1988) 46 Cal.3d 919, 932–933 [251 Cal.Rptr. 467, 760 P.2d 996].)

Penal Code section 273a, subdivision (b) provides, "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, *or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered*, is guilty of a misdemeanor." (Italics added.)

Defendant claims there was no basis for a finding that his daughter's person or health may have been endangered. In particular, he notes that there was no evidence that (1) she was capable of rolling or crawling and therefore could have fallen off the bed; (2) no evidence that contraband or dangerous objects were within her reach; and (3) no evidence that she had been physically neglected, uncared for, or undernourished. We are not persuaded.

Evidence of the child's age range reasonably supports an inference that she was old enough to be able to crawl or at least roll over. This inference, her unsecured location on a bed without restraints or railings, and the height of the bed reasonably support a finding that the child was left in a situation

where she may have been injured by falling off the bed. Indeed, Spillman testified that he feared the child might roll off the bed. Moreover, evidence concerning conditions inside the residence—the stench from rotten food and feces, piles of garbage, loose animals, and widespread vermin—reasonably supports a finding that the residence in general and master bedroom in particular were so unsanitary as to pose a potential danger to health. (Cf. *People v. Odom* (1991) 226 Cal.App.3d 1028, 1033 [277 Cal.Rptr. 265]; *People v. Harris* (1966) 239 Cal.App.2d 393, 395 [48 Cal.Rptr. 677].) Thus, taken together, evidence of the child's circumstances on the bed and the deplorable condition of her surroundings constitute ample evidence that defendant willfully engaged in conduct that placed his child's person and health in danger. That defendant possessed and used drugs in the residence and that others were found on the premises in possession of drugs and under the influence of drugs only strengthens the finding that the circumstances in the residence posed a threat to the child's health and safety.

## IV.  Lack of Advisements and Waivers

Before testimony began, the court asked, "And . . . we have a stipulation that Mr. Little was under the influence under [Health and Safety Code section] 11550; is that correct?" Defense counsel and the prosecutor concurred. Defense counsel noted that there were two stipulations: one that defendant was under the influence and the other that he had methamphetamine in his system. The prosecutor concurred. Defense counsel then stated, "Well, under the influence for purposes of [Health and Safety Code section] 11550. I don't know to the extent that he was actually, you know, under the influence but that we would admit—essentially admit the 11550 charge and also admit the lab results support that charge." The prosecutor and the court found the stipulation acceptable.

Later, the court read the following stipulation to the jury. "The parties agree that the following is not in dispute. [¶] At the time of the arrest of [defendant] on July 21, 2001, [defendant] was under the influence of a controlled substance, methamphetamine, in violation of Health and Safety Code section 11550(A). [¶] Furthermore, the parties agree that [defendant] provided a urine sample on July 21, 2001, to Officer [] Sebree shortly after his arrest. [Defendant's] urine sample was submitted to the Santa Clara County Crime Lab and tested by a state certified forensic toxicologist employed by the Santa Clara County Crime Laboratory using scientifically reliable tests and methods. The urine sample was found to be positive for methamphetamine."

Defendant contends that the stipulation was tantamount to a guilty plea, triggering the trial court's duty under *Boykin v. Alabama* (1969) 395 U.S. 238

[23 L.Ed.2d 274, 89 S.Ct. 1709] (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] (*Tahl*) to advise him of his constitutional rights to a jury trial, against compulsory self-incrimination, and to confront and cross-examine his accusers and obtain his knowing and voluntary waiver of those rights.[4] Since the record reflects neither advisements nor waivers, defendant claims his conviction must be reversed. We find merit in this claim.

In *People v. Adams* (1993) 6 Cal.4th 570 [24 Cal.Rptr.2d 831, 862 P.2d 831] (*Adams*) and *People v. Newman* (1999) 21 Cal.4th 413 [87 Cal.Rptr.2d 474, 981 P.2d 98] (*Newman*), the California Supreme Court addressed claims that a stipulation triggered the trial court's duty under *Boykin* and *Tahl*.

In *Adams,* the prosecutor alleged an enhancement that defendant committed his offense while on bail or released on his own recognizance pending other charges (Pen. Code, § 12022.1), and the defense stipulated that the alleged offense was committed while the defendant was on bail or his own recognizance. (*Adams, supra,* 6 Cal.4th at p. 574.) The court advised the defendant of his right to have the prosecutor present evidence to prove this fact and to confront and cross-examine any witnesses presented for this purpose. The court further advised him that although the jury would have to make an enhancement finding, it would almost necessarily find the allegation true. Last, the court advised him that the enhancement carried a two-year sentence and that it could not be imposed unless the jury found him guilty of the charged offense. However, it warned that the stipulation established a substantial portion of the proof required for the enhancement. The defendant said he understood and confirmed his desire to enter the stipulation. (*Id.* at pp. 574–575.)

On appeal, defendant argued that his stipulation was void because the court had not complied with the *Boykin-Tahl* requirements of advisements and waivers. The California Supreme Court disagreed. The court acknowledged that the duty to comply with the *Boykin-Tahl* requirements is not limited to guilty pleas. "A defendant's agreement to submit the case on the record of the preliminary hearing in circumstances tantamount to a plea of guilty is also subject to those requirements [citations], as is an admission of an allegation made in the information or indictment for the purpose of increasing the punishment otherwise applicable to the offense. [Citation]" (*Adams, supra,* 6 Cal.4th at p. 576.) However, the court pointed out that in the context of the

---

[4] In *Boykin, supra,* 395 U.S. 238, the United States Supreme Court held that in accepting a guilty plea, the trial court must ensure that the record reflects that the defendant knowingly and voluntarily waived these constitutional rights. (*Id.* at p. 242.)

In *Tahl, supra,* 1 Cal.3d 122, the California Supreme Court held that under *Boykin,* the record on its face must reflect the defendant was advised of each of his or her rights and responded to these advisements. (*Tahl,* at p. 132; cf. *People v. Howard* (1992) 1 Cal.4th 1132, 1178 [5 Cal.Rptr.2d 268, 824 P.2d 1315].)

bail/recognizance enhancement allegation, a stipulation to being on bail, standing alone, does not cover every fact necessary to the imposition of additional punishment. Rather, the trier of fact must also find the defendant guilty of the underlying offense. (*Id.* at p. 580.) The court observed that in other contexts *evidentiary* stipulations need not be preceded by advisements and waivers. (*Id.* at p. 577; e.g., *People v. Hovey* (1988) 44 Cal.3d 543 [244 Cal.Rptr. 121, 749 P.2d 776] [defendant charged with murder with a kidnapping special circumstances allegation, stipulation concerning identity of kidnapper did not require advisements and waiver].) Consequently, the court concluded that a defendant's stipulation to some, but not all, of the evidentiary facts or elements necessary to the imposition of punishment on a charged enhancement, as opposed to an admission of the truth of an enhancing allegation, did not trigger the *Boykin-Tahl* requirements. (*Adams, supra,* 6 Cal.4th at p. 577.)

In *Newman*, the prosecutor charged the defendant with possession of a firearm by a felon and alleged numerous prior felony convictions. Trial on the charges and enhancements was bifurcated, and, before trial on the substantive charges, the defendant stipulated to his status as a felon. (*Newman, supra,* 21 Cal.4th at pp. 416–417.) On appeal, the defendant, relying on *People v. Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826], claimed the stipulation was void because the trial court failed to provide constitutional advisements and obtain waivers.

In *Hall*, the California Supreme Court held that in a prosecution for possession of a firearm by an ex-felon, a defendant may prevent the jury from learning about prior felony convictions if he or she offers to stipulate to being a felon. (*People v. Hall, supra,* 28 Cal.3d at p. 156.) In dicta, the court observed that such a stipulation shares characteristics with an admission of a prior felony conviction for enhancement purposes and a submission of a case to the court based on a preliminary hearing transcript. Like an admission, a stipulation relieves the prosecution of the burden of proving the defendant's prior conviction beyond a reasonable doubt; and like a submission on a transcript, the stipulation to an element of the offense involves a partial waiver of significant constitutional rights. Consequently, for future guidance, the court advised that when a defendant offers to stipulate to his or her status as a felon, the trial court must ensure that the record adequately reflects advisements and waivers of constitutional rights. (*People v. Hall, supra,* 28 Cal.3d at p. 157, fn. 9.)

In *Newman*, the court pointed out that the holding in *Hall* was abrogated by Proposition 8, which mandated proof of prior felony convictions in open court. (Cal. Const., art. I, § 28, subd. (f).) The court then disapproved the *Hall* dicta. Relying on its analysis in *Adams*, the court held that a stipulation

to felon status does not trigger the *Boykin-Tahl* requirements. (*Newman, supra,* 21 Cal.4th at pp. 415, 420, 422.) In particular, the court noted that no penal consequences flowed directly from a simple stipulation to one's status as a felon and, therefore, the stipulation was not sufficiently similar to an admission of an enhancement allegation or a guilty plea to require constitutional advisements and waivers. (*Id.* at p. 422.)

Here, the People submit that this case is like *Adams* and *Newman.* They assert that defendant did not stipulate to all of the elements of a violation of Health and Safety Code section 11550, and, therefore, advisements and waivers were not required. In particular, they note that although defendant stipulated to being under the influence, he did not expressly stipulate to the requisite mens rea of the crime—i.e., that he *willfully and unlawfully* was under the influence of a controlled substance. (See CALJIC No. 16.060.)[5] We view the stipulation differently.

The stipulation was not expressly limited to the single evidentiary fact of being under the influence of methamphetamine. Rather, defendant stipulated that he "was under the influence of a controlled substance, methamphetamine, *in violation of Health and Safety Code section 11550(A)*." (Italics added.) This language mirrors the language of the information, and it directly and unambiguously represents a stipulation that defendant violated the statute. Thus, although defendant did not expressly stipulate that he acted willfully and unlawfully, the stipulation to a violation of the statute necessarily subsumed all elements and facts necessary for conviction and punishment, including the requisite mens rea.

Defense counsel's statements before the court accepted the stipulation and closing argument by both counsel confirm the meaning and effect of the stipulation. As noted, in offering the stipulation, defense counsel stated that "we would admit—essentially admit the [Health and Safety Code section] 11550 charge . . . ." During closing argument, the prosecutor noted the stipulation. Thereafter, he did not point to evidence showing willfulness, argue that the evidence established this mens rea, or suggest that the jury had to find the requisite mens rea in addition to accepting the stipulation. Indeed, the

---

[5] It is unclear whether the jury here was aware that a conviction required a finding of willfulness. The court instructed the jury that in order to prove the charge that defendant violated Health and Safety Code section 11550, subdivision (a), "the following elements must be proved: One, a person willfully and unlawfully used a controlled substance, namely methamphetamine, *or* a person is under the influence of a controlled substance, namely methamphetamine." (Italics added.) Moreover, in reading the information to the jury, the court stated, in pertinent part, that count 2 charged that on July 21, 2001, "the crime of using or being under the influence of a controlled substance in violation of Health and Safety Code section [11550], a misdemeanor, was committed by Deric Little, who was under the influence of a controlled substance, methamphetamine."

prosecutor said he did not think there would be much argument on this count. Defense counsel expressly told the jury that the stipulation required it to find defendant guilty. We further note that both before any testimony was given and again after closing arguments, the court advised the jury that "if the attorneys have stipulated or agreed to a fact, you *must* regard that fact as proven as to the party or parties." (Italics added.)

■ Under the circumstances, therefore, the issue becomes whether defendant's stipulation triggered a duty to comply with the *Boykin-Tahl* requirements. As noted, in both *Adams* and *Newman*, the court concluded that a stipulation to some but not all of the evidentiary facts required for a conviction or enhancement and punishment does not require *Boykin-Tahl* advisements and waivers. However, the court in neither case explicitly endorsed the converse proposition—i.e., a stipulation or admission to all of the evidentiary facts or elements of a crime or enhancement requires advisements and waivers. Indeed, in *Newman, supra,* 21 Cal.4th at page 422, footnote 4, the court expressly declined to determine "what rule should apply" to such a stipulation. As we shall explain, however, we conclude that the stipulation here triggered a duty to give constitutional advisements and obtain waivers.

In *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473] (*Mosley*), the court stated that where a stipulation to submit the case to the court on the transcript of a preliminary hearing is "tantamount to a guilty plea," and thereby purports to waive the whole panoply of constitutional trial rights, the stipulation must be accompanied by an affirmative showing on the record that the defendant waived his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. (*Id.* at pp. 924, 926, fn. 10.)

Later, in *Bunnell v. Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086] (*Bunnell*), the court stated that it had used the phrase "tantamount to a guilty plea" in *Mosley* "to explain [the] extension of *Boykin-Tahl* requirements to submissions in which the guilt of the defendant was apparent on the basis of the evidence presented at the preliminary hearing and in which conviction was a foregone conclusion if no defense was offered." (*Bunnell, supra,* 13 Cal.3d at p. 602.) The court noted that in *Boykin*, "the United States Supreme Court held that a defendant who pleads guilty must be shown to have done so voluntarily with an understanding of the nature of the offense charged, of the consequences of this plea, and that he thereby waived his rights to trial by jury, to confrontation by adverse witnesses, and against compulsory self-incrimination." (*Bunnell,* at pp. 602–603.) Continuing, the court stated, "We reasoned in *Mosley* that when a defendant submits his case for decision on the basis of evidence presented at the preliminary hearing in circumstances in which conviction is a certainty, *the*

*same rule should apply because that defendant surrenders the same important constitutional rights in circumstances in which conviction is as certain as it would have been had he pleaded guilty. In equating such submissions to guilty pleas for this purpose we did no more than recognize that because the same constitutional rights were being surrendered by both classes of defendants it was equally important that both classes of defendants understand the effect of their actions."* (*Ibid.* italics added.)

In *Adams, supra,* 6 Cal.4th at page 577, the court again explained the rationale for extending the *Boykin-Tahl* requirements when a defendant admits the truth of an enhancement allegation or the truth of the only fact necessary to establish the enhancement, such as an enhancement based on a prior felony conviction. Although the defendant's guilt for underlying charges is not at stake, " 'the practical aspects of a finding of prior convictions may well impose upon a defendant additional penalties and sanctions which may be even more severe than those imposed upon a finding of guilty without the defendant having suffered the prior convictions.' [Citation.] Since the Legislature had provided for a trial on allegations of prior convictions, thereby giving the defendant a right to jury trial and proof beyond a reasonable doubt, we accepted the petitioner's argument that the procedure leading to imposition of the added penalties was protected by specific constitutional provisions which could not be waived unless the defendant had knowledge of the rights and understood the impact of his plea on those rights. [¶] 'Because of the significant rights at stake in obtaining an admission of the truth of allegations of prior convictions, which rights are often of the same magnitude as in the case of a plea of guilty, courts must exercise a comparable solicitude in extracting an admission of the truth of alleged prior convictions. Although the issue was not before the Supreme Court in *Boykin* nor before us in *Tahl,* it is nevertheless manifest that an accused is entitled to be advised of those constitutional rights waived by him in making such an admission. As an accused is entitled to a trial on the factual issues raised by a denial of the allegation of prior convictions, an admission of the truth of the allegation necessitates a waiver of the same constitutional rights as in the case of a plea of guilty. [Citation.]" (*Adams, supra,* 6 Cal.4th at p. 577, italics omitted.)

In rejecting a claim that advisements and waivers were also necessary when a defendant stipulates to some but not all of the evidentiary facts necessary to imposition of additional punishment, the *Adams* court stated that the *Boykin-Tahl* requirements become necessary because of the nature and consequences of a guilty plea. The court explained that a plea is more than a confession; it is a *conviction.* The court reasoned that since a confession is not admissible without a determination concerning its voluntariness that satisfies the defendant's constitutional rights, the same determination of voluntariness must precede a guilty plea to establish that it too satisfies the defendant's constitutional rights. However, because a stipulation to some but

not all of the elements of a crime or enhancement has no penal consequences comparable to those that flow from a confession or guilty plea, such a stipulation does not raise the constitutional concerns that prompted the *Boykin-Tahl* requirements, especially when the defendant who makes the stipulation also asserts his or her right to a trial and waives no constitutional rights. (*Adams, supra,* 6 Cal.4th at pp. 580–581.)

As discussed above, defendant's stipulation that he violated Health and Safety Code section 11550, subdivision (a) implicitly and necessarily covered all evidentiary facts required for a conviction and imposition of punishment. Thus, his conviction here was a foregone conclusion, even more so than it is in submission cases where the preliminary hearing transcript contains overwhelming and undisputed evidence of culpability, and the defendant does not contest his or her guilt. In such circumstances, the court must still evaluate the evidence, decide whether it is credible and sufficient to prove guilt beyond a reasonable doubt, and from it find that the defendant violated the law as charged. Here, however, the court's instructions required the jury to accept as a proven fact that defendant violated the statute. Thus, the stipulation was tantamount to a guilty plea or an admission to the truth of an enhancement allegation.

Under the circumstances, therefore, we find the rationale for the *Boykin-Tahl* requirements, as explained by the California Supreme Court in *Mosley*, *Bunnell*, and *Adams*, applicable with equal force when a defendant stipulates to each and every evidentiary fact or element of a charged offense necessary for a conviction and imposition of punishment or, as here, implicitly does so by stipulating, in language that mirrors the charges, that he or she violated a criminal statute.

Citing *People v. Howard, supra,* 1 Cal.4th 1132, the People claim that, if error, the failure to give advisements and obtain waivers was harmless because the record affirmatively demonstrates that defendant's stipulation was voluntary and intelligent under the totality of the circumstances. They argue that defendant "was not required to waive his right to jury trial since the jury was still required to make the determination of guilt. [Defendant] did not testify. Moreover, the record demonstrates a very strong factual basis for the stipulation." Thus, according to the People, "there is no reasonable possibility that had [defendant] been advised of, and then been required to waive, his constitutional rights prior to the court's acceptance of the stipulation, he would have failed to do so." We are not persuaded.

The stipulation relieved the prosecution of the burden of presenting all witnesses necessary to prove that defendant was in fact under the influence of methamphetamine and by agreeing to the stipulation, defendant surrendered

his constitutional privilege against self-incrimination and at least partially his right to confront and cross-examine witnesses.[6]

It is true, as the People point out, that there was a jury and there was a trial. Arguably, therefore, the stipulation did not involve a waiver of the right to a *jury* trial. As noted, however, the court's instructions required the jury to accept as a proven fact that defendant violated Health and Safety Code section 11550, subdivision (a). Consequently, the jury did not have to consider and evaluate the weight of evidence concerning this charge or even discuss whether or not defendant was guilty. Rather, the jury was required to accept as a fact that defendant violated the law, and as a result, all it had to do was enter the guilty verdict preordained by the stipulation on the verdict form. Thus, the jury here did not have to perform the traditional functions that attend a determination of guilt. Rather, in substance, the jury performed a procedural function similar to that performed by the court when it accepts a guilty plea or an admission concerning the truth of an enhancement allegation; similar, but with one important difference. Unlike the defendants in those situations, defendant here was not advised of any of his constitutional trial rights, he was not told that the stipulation would require total or partial surrender of those rights, and he did not waive any of those rights.[7]

Under the circumstances, the record does not affirmatively demonstrate that defendant's stipulation was knowing and voluntary.

We also find the People's reliance on *People v. Howard, supra,* 1 Cal.4th 1132, to be misplaced. There, the defendant admitted an enhancement allegation that he had served a prior prison term. On appeal, he claimed the enhancement must be reversed because the trial court accepted his admission without first advising him, expressly and on the record, of the privilege against self-incrimination. (*People v. Howard, supra,* 1 Cal.4th at p. 1174.)

---

[6] Defendant did have the opportunity to confront and cross-examine Sebree, who testified that defendant exhibited signs of being under the influence. However, Sebree's testimony was insufficient, standing alone, to obtain or support a conviction for being under the influence.

[7] In a case such as this, where the defendant has a *jury* trial but stipulates to a violation of a charged offense, the question arises concerning whether the court must advise the defendant of his right to a jury trial and obtain waiver of that right. Notwithstanding our view that as a result of the stipulation, the jury here performed a limited function, we agree with the People that defendant had a jury trial. Nevertheless, given the fundamental importance attached to the right to have a jury determine guilt and given the impact of the stipulation here on the jury's function, which made a guilty verdict a foregone conclusion, if not a procedural formality, we believe that some advisement concerning the right to a jury trial is necessary to ensure that the defendant knows the stipulation will, as defense counsel here told the jury, require the jury to find him or her guilty and without the stipulation the jury would have to evaluate the evidence and from it determine beyond a reasonable doubt whether defendant was guilty. (See, e.g., *Adams, supra,* 6 Cal.4th at pp. 574–575 [where defendant stipulated to felon status, trial court advised that jury would have to make a finding on the enhancement allegation, but given the stipulation, the jury would almost necessarily find the allegation true].)

After finding that the trial court had "clearly erred," the California Supreme Court addressed the proper standard of review. (*People v. Howard, supra,* 1 Cal.4th at p. 1174.) It concluded that the error was not reversible per se and held instead that the failure to advise and obtain waivers may be deemed harmless if the record "affirmatively demonstrate that the plea was voluntary and intelligent under the totality of the circumstances." (*Id.* at p. 1178.) In that case, the court found the error harmless. It noted that before accepting the admission, the trial judge advised the defendant that he had a right to a jury trial on the enhancement allegations and asked if he understood this and wished to waive this right. The defendant said he did. The judge then advised the defendant that he could force the prosecutor to prove the allegation with evidence and witnesses, whom he had the right to confront and cross-examine. He asked the defendant if he wished to waive this right. Again the defendant said he did. Thereafter, the judge accepted the admission. (*Id.* at pp. 1179–1180.) In finding the failure to advise the defendant about his privilege against self-incrimination or obtain a waiver, the court noted that a guilty plea is the most complete form of self-incrimination, and the record—especially the trial judge's advisement that he could have a trial on the enhancement—affirmatively demonstrated that the defendant knew he did not have to admit the enhancement allegation and thereby incriminate himself. The court also noted that the defendant had already been represented by counsel at trial on the underlying charges and thus knew what the right to a jury trial meant. Last, the court noted that there was a strong factual basis for the plea. (*Ibid.*)

*Howard* is distinguishable from this case. Here, defendant's stipulation was offered during trial and before defendant had exercised his right to remain silent or cross-examine any witnesses. Moreover, there were no advisements from which defendant could possibly and reasonably have inferred that by offering the stipulation, he was surrendering his privilege against self-incrimination and at least partially surrendering his right to confront and cross-examine witnesses concerning the charge of being under the influence. Nor was he advised that as a consequence of the stipulation, the jury would, in effect, be required to enter a guilty verdict. Thus, although we agree that there was a strong factual basis for the stipulation, the record here is materially different from that in *Howard* and does not establish a knowing and voluntary stipulation. (Cf. *People v. Howard* (1994) 25 Cal.App.4th 1660 [31 Cal.Rptr.2d 103] [record failed to reflect that admission was knowing and voluntary]; *People v. Torres* (1996) 43 Cal.App.4th 1073 [51 Cal.Rptr.2d 77] [same]; *People v. Carroll* (1996) 47 Cal.App.4th 892 [54 Cal.Rptr.2d 868] [same].)

In sum, we conclude that the failure to properly advise defendant and obtain his waivers concerning his constitutional trial rights was not harmless. Therefore, his misdemeanor conviction for being under the influence cannot stand.

## V.    Disposition

The judgment is reversed, and the matter is remanded to the trial court for possible retrial of the charge under Health and Safety Code section 11550. If, within 30 days of the filing of the remittitur the district attorney elects not to retry the charge, then the court shall resentence defendant and enter a new judgment.

Elia, Acting P. J., and Mihara, J., concurred.