Filed 5/27/15  P. v. Valdizan CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MARCO VALDIZAN,<br><br>　　　Defendant and Appellant. | B252909<br><br>(Los Angeles County<br>Super. Ct. No. BA388637) |

　　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Norm Shapiro, Judge.  Affirmed.

　　　　　Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Marco Valdizan appeals from a judgment following his conviction of rape of an intoxicated person (Pen. Code, § 261, subd. (a)(3))[1] and sexual penetration of an intoxicated person by a foreign object (§ 289, subd. (e)). He contends the conviction is not supported by substantial evidence. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The victim, 19-year-old Larissa Z., met appellant in the lobby of her building and exchanged Facebook information with him. Appellant was a nightclub promoter, and in March 2011, he sent out a mass invitation on Facebook to a nightclub located in the W hotel in Hollywood. Larissa brought along her roommate D. B., who had not met appellant.

Appellant procured a fake identification card for Larissa, and she and D. sat with appellant's other guests in his booth at the club. Over the course of the night, the two women consumed large quantities of alcohol and became intoxicated. Neither could keep her balance, and when they fell on their way to the restroom, a security guard escorted them out of the club. The women vomited and lay down on couches in the hotel lobby. Hotel security escorted them outside the hotel, and eventually they got into a taxi cab. Larissa was so unstable on her feet that she fell down before she got into the cab. Appellant intervened at some point and instructed the driver to take them to appellant's apartment. The women fell asleep in the cab.

When they reached appellant's apartment, Larissa vomited again as she was exiting the cab, and appellant directed her to his bathroom to clean up. He used blankets to make a makeshift bed for Larissa on the floor, and let D. use his bed. At some point during the night, D. heard Larissa cry for help. She looked over and saw appellant on top of Larissa. Their bodies were partially covered with a sheet, but appellant was making thrusting motions with his pelvis, which made D. think he was having intercourse with Larissa. Larissa appeared to be vomiting, and she kept on crying for help. Afterwards,

---

[1] Statutory references are to the Penal Code.

2

appellant took Larissa to the bathroom and cleaned the vomit off the floor. D. managed to crawl out of bed and reach the bathroom, where she saw Larissa in the bathtub with the shower running. Appellant appeared to be washing her. Larissa was still throwing up and crying. Larissa's only memory of the night was "cold water at some point, and . . . someone behind me and the motion of having sex while I was throwing up."

Sometime later, D. woke up to find appellant in bed with her. She remembered him saying, "I fucked your friend, and I'm going to fuck you." According to D., appellant had intercourse with her against her will, ejaculating inside her even though she asked him not to.

In the morning, Larissa's stomach, abdomen, and vagina hurt, and she felt as if she had had sex. She had no idea where she was. D. told her what she thought had happened during the night. Appellant called the women a cab. When they got home, Larissa showered, and D. changed her clothes. Later that day, the women went to a Planned Parenthood clinic, then called the police. They underwent a sex assault examination that evening. Sperm collected from inside each woman's vaginal canal and from outside Larissa's vagina was matched to appellant.

Appellant was charged with forcible rape as to D., and with rape of an unconscious person, rape of an intoxicated person, and sexual penetration of an intoxicated person with a foreign object as to Larissa.

At the bench trial, the women's testimony was supplemented with Larissa's recorded phone call to appellant after the incident. During the call, appellant told Larissa that she had been "puking and puking and puking . . . the whole entire night," that he thought she had alcohol poisoning, and seriously considered calling an ambulance. Only after Larissa said she felt as if they had had sex did appellant disclose they had "fooled around." He claimed they had kissed at the night club but had not made out at his apartment because she "smelled of throw up." He admitted to having lain down on the floor next to Larissa and to having hugged her, touched her breasts, and penetrated her vagina with his finger. He thought she had moaned because she enjoyed it, but then she had started throwing up again. Appellant did not believe Larissa's claim that she and D.

3

were pregnant; he denied having had intercourse with Larissa, but admitted having had intercourse with D.

Testifying in his own defense at trial, appellant continued to insist he had not had intercourse with Larissa. He claimed the two had masturbated each other; he had ejaculated and had placed his finger in Larissa's vagina. According to appellant, Larissa had welcomed his advances and had reciprocated. He also testified to having had consensual intercourse with D. twice on the night in question. Appellant's brother testified in appellant's defense that he heard the sounds of consensual lovemaking coming from appellant's bedroom during the night in question.

The nurse practitioner who had examined the women testified on rebuttal that vaginal swabs had been taken from the vaginal pool, which is six to seven inches into the vagina, and that sperm cannot be deposited manually that deep, except by a finger that is long enough.

The court found appellant guilty of the counts of rape of an intoxicated person and sexual penetration of an intoxicated person by a foreign object, both as to Larissa. The court was not convinced beyond a reasonable doubt that Larissa had been unconscious or that appellant had forcibly raped D., and it acquitted appellant of the rape of an unconscious person charge as to Larissa and the forcible rape charge as to D. Appellant was sentenced to two concurrent six-year terms and awarded 85 days of presentence credits. This appeal followed.

**DISCUSSION**

Appellant's contention that the evidence does not support his conviction of rape and digital penetration of an intoxicated person is based on a misunderstanding of the relevant standard of review.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

4

defendant guilty beyond a reasonable doubt.'" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) . . . In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) Under the substantial evidence standard of review, "we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses. [Citation.]" (*People v. Little* (2004) 115 Cal.App.4th 766, 771.)

Appellant urges us to review "the whole record," including his version of events. On appeal, however, we review the record "'"in the light most favorable to the judgment."'" (*People v. Edwards*, *supra*, 57 Cal.4th at p. 715.) Appellant argues we should reject D.'s testimony and credit his own testimony in its entirety because his acquittal on the charge of forcible rape as to D. established that she was not credible and that he was. He insists that he "was either credible or he was not," losing sight of the well established principle that the trier of fact may accept or reject a witness's testimony in whole or *in part*. (*People v. Fuiava* (2012) 53 Cal.4th 622, 715, fn. 34.) The trial court stated there were "certain things about [appellant's] testimony" that it believed, and the verdict indicates it gave appellant the benefit of the doubt as to his conduct with D. But nothing in the record or verdict suggests the court credited appellant's testimony in its entirety, and on appeal we do not redetermine issues of credibility. (*People v. Little*, *supra*, 115 Cal.App.4th at p. 771.)

The charge of rape of an intoxicated person requires sexual intercourse with a non-spouse whom the perpetrator knew, or reasonably should have known, was prevented from resisting due to intoxication. (§ 261, subd. (a)(3).) The trial court found that appellant had had sexual intercourse with Larissa based on the DNA evidence that appellant's sperm was inside Larissa's vaginal pool. "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. [Citation.]" (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) It is reasonable to infer appellant's sperm was deposited deep into Larissa's vagina during sexual intercourse, and that reasonable inference is sufficient to support the judgment. Whether or not sperm

also could have been deposited by appellant's finger, as appellant argues, is immaterial on appeal since we must draw reasonable inferences in favor of the judgment, not in favor of appellant. (*People v. Holt* (1997) 15 Cal.4th 619, 668 [""""If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment"""""].)

The testimony of Larissa and D. also supports the finding that appellant had sexual intercourse with Larissa. Appellant takes issue with minor differences in the women's testimony—that Larissa vaguely remembered cold water, someone behind her, and the motion of having sex while she was vomiting, while D. remembered that Larissa was on her back on the floor when D. saw appellant making thrusting motions with his pelvis above her. It is not clear whether the women's memories refer to the same moment in time, but even if they do, conflicts as to minor details, such as Larissa's position, do not render "physically impossible or inherently improbable" each woman's testimony that appellant appeared to be having intercourse with Larissa while she was vomiting. (*People v. Elliott* (2012) 53 Cal.4th 535, 585 ["Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction."]

Appellant also challenges the correctness of D.'s assumption that what she saw was an act of intercourse. The testimony that she saw appellant make thrusting motions with his pelvis over Larissa gives rise to a reasonable inference that appellant was engaged in an act of sexual intercourse. As we have explained, we must draw reasonable inferences that support the judgment, even though other reasonable inferences may also be possible. Appellant challenges Larissa's memory in light of her overall inability to remember the events of the night. But even testimony "subject to justifiable suspicion" does not justify the reversal of a judgment. (*People v. Elliott*, *supra*, 53 Cal.4th at p. 585.)

Appellant contends he believed Larissa willingly accepted his advances because, according to his version of events, she pushed her buttocks into his pelvis when he lay

6

down next to her, moaned loudly, and stroked his penis. Appellant also relies on Larissa's testimony that, although she did not recall these events, they may have happened. There is no indication that the trial court credited this part of appellant's testimony, which is directly contradicted by the women's testimony that appellant appeared to be having sex with Larissa while she was regurgitating and crying for help. In light of appellant's conviction of rape as to Larissa, we cannot resolve the conflict in the evidence on this count in his favor. (*People v. Little*, *supra*, 115 Cal.App.4th at p. 771.)

Moreover, on the facts of this case, the result remains the same, even if it could be concluded that Larissa consented. Intoxication prevents resistance when it renders the victim incapable of giving legal consent—that is, exercising judgment and understanding "the physical nature of the act," as well as "its moral character and probable consequences." (*People v. Giardino* (2000) 82 Cal.App.4th 454, 466.) The actual consent of a victim "so unsound of mind that he or she is incapable of giving legal consent" is not a defense to rape of an intoxicated person, and the perpetrator's "belief in the existence of such actual consent is irrelevant." (*Id*. at pp. 460, 471.) The record overwhelmingly supports the conclusion that 19-year-old Larissa was incapable of consenting to any sexual activity because she was so intoxicated that she was physically sick throughout the night, drifted in and out of consciousness, and suffered memory loss. (See *id*. at pp. 468–469.)

The record also belies appellant's contention that he reasonably believed Larissa was capable of giving consent. He admittedly knew she was "just out of it," had "never seen anyone so fucked up before in [his] life, ever," and was afraid she had alcohol poisoning because she had been vomiting throughout the night. The women's testimony that appellant had sexual intercourse with Larissa while she was regurgitating and crying for help also supports the conclusion that he could not have reasonably believed Larissa was capable of consent.

Viewed in the light most favorable to the judgment, substantial evidence in the record supports appellant's conviction of rape of an intoxicated person.

The charge of sexual penetration of an intoxicated person with a foreign object had the same elements as that of rape of an intoxicated person, except that it was based not on sexual intercourse but on appellant's penetration of Larissa's vagina with his finger. (§ 289, subds. (e) & (k).) Appellant contends his conviction of this charge violated the corpus delicti rule because it was based solely on his own admission of that act.

The corpus delicti rule precludes a conviction based exclusively on a defendant's uncorroborated extrajudicial statements, confession, or admissions. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169.) The corroborating evidence "may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.]" (*Id.* at p. 1171.) The corpus delicti may be established "by the voluntary testimony of defendant as a witness at the trial. [Citations.]" (*People v. Redd* (1969) 273 Cal.App.2d 345, 351; see also *People v. Martinez* (1994) 26 Cal.App.4th 1098, 1104.)

The court found that appellant had committed the crime based both on his out-of-court admissions during Larissa's recorded telephone call and his trial testimony. Appellant's trial testimony was sufficient to establish the corpus delicti. (*People v. Martinez, supra*, 26 Cal.App.4th at p. 1104.) But he contends the prosecution's position at trial was that "appellant admitted to fingering Larissa only as a means of denying they had intercourse," and that "appellant's statement to Larissa was a fabrication and that statement and subsequent testimony was not credible." The record does not support this representation. The prosecutor sought to discredit appellant's explanation that he had digitally deposited his sperm into Larissa's vagina, but not his testimony that he had digitally penetrated Larissa. As to the latter, the prosecutor argued that "appellant has assured the court beyond a reasonable doubt he did, in fact, commit the crime . . . of digital penetration." The prosecutor argued generally that appellant was an unreliable

8

witness, and that the "actual truth" was he raped the two women and "finger[ed]" Larissa. The prosecutor's argument that appellant "finger[ed]" Larissa cannot be read as rejecting appellant's testimony about the digital penetration as incredible. In any event, the trial court was the ultimate judge of its credibility.

We already have concluded that Larissa could not validly consent to sexual activity, and appellant did not reasonably believe she was capable of consenting. Sufficient evidence supports his conviction of sexual penetration of an intoxicated person with a foreign object.

**DISPOSITION**

The judgment is affirmed.[2]

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

---

[2] The abstract of judgment incorrectly reflects that appellant's conviction was by plea. It should be corrected to reflect that appellant was convicted after a bench trial.

9