Filed 1/7/16  P. v. Ryan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BROOK PETER RYAN,<br><br>    Defendant and Appellant. | C077725<br><br>(Super. Ct. No. P14CRF0044) |

Following a jury trial, defendant Brook Peter Ryan was convicted of a single count of second degree robbery.  (Pen. Code, § 211.)[1]  The trial court found true allegations that defendant had served two prior prison terms (§ 667.5, subd. (b)), and sentenced him to an aggregate term of five years in state prison.

On appeal, defendant challenges the sufficiency of the evidence to support the conviction.  Specifically, he contends the evidence was insufficient to negate the

---

[1]  Undesignated statutory references are to the Penal Code in effect at the time of the charged offense.

1

possibility that he had previously paid for the items found in his pockets at the time of his arrest. We conclude that substantial evidence supports the jury's determination that defendant took property belonging to another.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 15, 2014, Matthew Seger was working at a Grocery Outlet in Placerville. Seger was setting up a Valentine's display near the entrance to the store when he saw defendant walking briskly from the back of the store. As defendant walked by, Seger noticed a block of cheese sticking out of one of defendant's pockets. Seger also noticed the outline of another bulky object in defendant's other pocket.

Seger approached defendant and asked to see what was in his pockets. Defendant walked past Seger and left the store. Defendant had bypassed the cash registers and made no attempt to pay for the cheese or any other groceries.

Seger followed defendant out of the store and again asked to see what was in defendant's pockets. Defendant responded, "[F]uck no." Seger then told defendant he was going to call the police. As Seger attempted to call 911 on his cell phone, he noticed, out of the corner of his eye, defendant take a step back. Within that split second, Segar looked up just in time to attempt to avoid being struck in the face by defendant. Defendant's blow, nevertheless, connected with Segar's chin and knocked Segar back "a little bit."

Defendant then left the shopping center on foot, following an adjacent trail to a nearby wooded area. Police located defendant and arrested him shortly thereafter. Police searched defendant and found two blocks of cheese and a package of Canadian bacon in his pockets. Those items were taken back to the store and scanned at a cash register to determine their value.

Defendant was charged by information with a single count of second degree robbery. The information further alleged that defendant had served two prior prison terms.

2

Defendant was tried by a jury. During the trial, Gregory Danker, one of the store owners, testified that he recognized the cheese and Canadian bacon as having come from the Grocery Outlet. However, Danker acknowledged on cross-examination that he did not know whether the cheese and Canadian bacon or the bar codes on those items were exclusive to the Grocery Outlet, thereby conceding that the groceries could have been purchased at another store.

During closing argument, defendant's trial counsel argued, "One of the essential elements of robbery . . . is you got to take property belonging to another and you have to have intent to permanently deprive that other person of the property. And yesterday we had brought Mr. Danker up here and sort of got drug up at the last minute, poor guy. And the issue is: Did the property really belong to the Grocery Outlet? Remember, I asked him: Do you know whether or not these two pieces of cheese and the Canadian bacon were exclusive to the Grocery Outlet? He couldn't tell us that. Do you know whether or not the bar codes that were on the packaging of the two cheese packages and the Canadian bacon were exclusive only to Grocery Outlet; in other words, only the Grocery Outlet register could read it? He couldn't tell us that either. So, seriously, how do we really know that the items in his pocket weren't from some other location; weren't from some other location that he possibly purchased them from, or maybe stole 'em from?"

During her rebuttal, the prosecutor dismissed defense counsel's argument as "ridiculous," stating, "If you're walking around with a block of cheese in your pocket, that's not really something that most reasonable people do. And we had testimony, of course, that it was ID'd by the store. So that's the cheese."

Defendant was found guilty as charged. In a bifurcated proceeding, the trial court found the prior prison term allegations to be true.

Defendant was sentenced to an aggregate term of five years in state prison, comprised of the middle term of three years for the second degree robbery conviction, plus two consecutive years for the prior prison term allegations.

3

## DISCUSSION

Defendant argues there is insufficient evidence to support his conviction for second degree robbery. Specifically, he contends nothing in the record supports the jury's determination that he took property that was not his own. We conclude sufficient evidence supports defendant's conviction.

"When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the verdict, drawing all inferences that reasonably support it, and determine whether it contains substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a trier of fact could rationally find the defendant guilty beyond a reasonable doubt. [Citations.] In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses. [Citation.] Moreover, because it is the jury, not the reviewing court, that must be convinced of the defendant's guilt beyond a reasonable doubt, *we are bound to sustain a conviction that is supported by only circumstantial evidence, even if that evidence is also reasonably susceptible of an interpretation that suggests innocence.* [Citation.]" (*People v. Little* (2004) 115 Cal.App.4th 766, 771, italics added; see also *People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by force or fear." (§ 211.) Thus, the elements of robbery are: (1) the taking of personal property; (2) from a person or the person's immediate presence; (3) by means of force or fear; (4) with the intent to permanently deprive the person of the property. (*Ibid.*; *People v. Marshall* (1997) 15 Cal.4th 1, 34.) " 'If the other elements are satisfied, the crime of robbery is complete without regard to the value of the property taken.' " (*People v. Clark* (2011) 52 Cal.4th 856, 943.) A store employee may be the victim of a robbery, even though he is not the store's owner and not at the moment in immediate control of the stolen property. (*People v. Nguyen* (2000) 24 Cal.4th 756, 761-762.)

4

Defendant notes that "[t]here was no testimony establishing how the Canadian bacon and cheese came into [his] possession," and claims the prosecution failed to prove he did not pay for them. However, the jury heard evidence that defendant was seen walking briskly from the back of the store towards the exit with a block of cheese sticking out of his pocket. The jury also heard evidence that defendant bypassed the cash registers and made no attempt to pay for the cheese or anything else. When confronted, defendant became belligerent, refused to stop, struck Seger when he called 911, and retreated to a wooded area where police found two blocks of cheese and a package of Canadian bacon. Although Danker could not say for certain whether the groceries came from Grocery Outlet, he recognized them as consistent with groceries sold at Grocery Outlet. On this record, a rational trier of fact could reasonably conclude that defendant took property belonging to another by means of force or fear. (§ 211.)

Defendant argues that his "actions might have been consistent with righteous indignation at being falsely accused." The jury was free to consider that scenario, but given that defendant struck Seger on the chin in response to Seger's request to see what was in his pocket and attempt to call the police, the jury could have also justifiably rejected defendant's scenario as unreasonable. Moreover, even if there were other reasonable inferences which could be drawn from the evidence, that circumstance would not require reversal of the judgment. (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [if the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding].) Accordingly, we reject defendant's challenge to the sufficiency of the evidence.

## DISPOSITION

The judgment is affirmed.

       MURRAY       , J.

We concur:

      NICHOLSON     , Acting P. J.

      RENNER       , J.