Filed 4/1/15  P. v. Arispe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RACHEAL ARISPE,<br><br>    Defendant and Appellant. | C072884<br><br>(Super. Ct. No. CRF120000877) |

A jury convicted defendant Racheal Arispe of possession of methamphetamine, a felony (Health & Saf. Code, § 11377, subd. (a); count 1), possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364.1; count 3), and abusing or endangering the health of a child, a misdemeanor (Pen. Code, § 273a, subd. (b)) as a lesser included offense to the felony charged in count 2 (Pen. Code, § 273a, subd. (a)). Defendant was placed on formal probation for four years.

1

Defendant raises claims related to her conviction for misdemeanor child abuse or endangerment.[1] She contends: (1) insufficient evidence supports her conviction; (2) the trial court erroneously allowed an officer to testify as an expert about the medical effects of methamphetamine use; and (3) the trial court erroneously allowed the prosecutor to argue facts not in evidence and attractive nuisance, a theory of law which was inapplicable to the case.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Charges

Defendant was charged with the following:

Count 1 - Health and Safety Code section 11377, subdivision (a), felony possession of methamphetamine.

Count 2 - Penal Code section 273a, subdivision (a), felony child endangerment. No specific child was listed as a victim in this count.

Count 3 - Health and Safety Code section 11364.1, possession of controlled substance paraphernalia, a misdemeanor.

### Trial Evidence

Sometime between 4:00 and 4:50 a.m. on March 1, 2012, police officer Jeremy Snyder went to defendant's apartment to conduct a welfare check. He observed that the door to this ground floor apartment was open and it swung open more when he knocked on it. When Officer Snyder entered defendant's apartment, he saw an "off-white color like haze" in the air near the living room ceiling. Officer Snyder recognized this haze as that caused by smoking methamphetamine. Upon his entry, four children were in the living room. The children, ages 10, 14, 15, and 16 years old, were defendant's children.

---

[1] Because the prosecution was based on an endangerment theory, we refer to the crime as child endangerment.

The 15 year old was pregnant. Within minutes, four adults came into the living room from the back of the apartment.

Defendant told Officer Snyder that she had used methamphetamine two hours before he arrived. She also admitted a syringe containing methamphetamine was in her bathroom. In the unlocked bathroom in an unlocked cabinet under the bathroom sink, Officer Snyder found a syringe containing fluid "up to the 20 mark" (0.02 cubic centimeters or 0.02 milliliters). The fluid contained methamphetamine. The syringe was inside a "sleeve" which was underneath a hand held hairdryer. Against a windowsill, Officer Snyder found broken glass, possibly from a smoking pipe, with burnt residue. Officer Snyder arrested defendant and the children were placed with Child Protective Services.

At trial, Officer Snyder opined that use of methamphetamine by a 10-year-old child would result in serious injury, including a potential heart attack or panic attack rendering the child unable to breath.[2]

## DISCUSSION

### I. Sufficiency of the Evidence of Misdemeanor Child Endangerment

Defendant first contends that insufficient evidence supports her conviction for misdemeanor child endangerment, arguing that the evidence she stored a loaded syringe with 0.02 milliliters of fluid containing methamphetamine did not demonstrate criminal endangerment or criminal negligence. We conclude sufficient evidence supports her conviction.

"When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the verdict, drawing all inferences that reasonably support it, and determine whether it contains

---

[2] Officer Snyder was not asked about whether methamphetamine ingestion by a 14, 15, or 16 year old could result in serious injury.

3

substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a trier of fact could rationally find the defendant guilty beyond a reasonable doubt. [Citations.] In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses. [Citation.] Moreover, because it is the jury, not the reviewing court, that must be convinced of the defendant's guilt beyond a reasonable doubt, we are bound to sustain a conviction that is supported by only circumstantial evidence, even if that evidence is also reasonably susceptible of an interpretation that suggests innocence. [Citation.]" (*People v. Little* (2004) 115 Cal.App.4th 766, 771 (*Little*).)

Penal Code section 273a, subdivision (b), provides: "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or *willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered*, is guilty of a misdemeanor." (Italics added.)

"The criminal acts proscribed by both the felony and misdemeanor subdivisions of [Penal Code] section 273a are (1) willfully inflicting or causing or permitting a child to suffer unjustifiable physical pain or mental suffering, (2) willfully causing the person or health of a child under one's care or custody to be injured, and (3) willfully placing a child under one's care or custody in a situation where its person or *health may be endangered.* If the act is done under circumstances or conditions likely to produce great bodily injury or death, it is a felony; if not, the same proscribed act is a misdemeanor." (*People v. Deskin* (1992) 10 Cal.App.4th 1397, 1401 (*Deskin*), italics added.)

Here, the prosecution proceeded on the branch of this omnibus statute that reads, "Any person who . . . willfully causes or permits [a] child to be placed in such a situation

4

where his or her . . . health may be endangered." (Pen. Code, § 273a, subd (b).) Preliminarily, we note what the statute does not require.

First, we note that the plain language of the statute does not require injury. (*People v. Wilson* (2006) 138 Cal.App.4th 1197, 1205 [actual physical injury not required for felony child endangerment].) Thus, contrary to the argument advanced by defendant, neither an "overdose" or "demonstrable damage" to the child is required. Nor does the statute require certainty of the danger or that the danger be of a serious injury. The difference between felony and misdemeanor child endangerment is that the felony requires the endangerment "occur under 'circumstances or conditions *likely to produce great bodily harm.*' " (*People v. Clark* (2011) 201 Cal.App.4th 235, 242, fn. 2; *Deskin*, *supra*, 10 Cal.App.4th at p. 1402 [The potential grave injury is the distinguishing characteristic of the felony and misdemeanor provisions.].) Misdemeanor child abuse or endangerment does not require circumstances or conditions likely to produce great bodily harm; it requires only a showing that the child's "health *may be* endangered." (*Deskin*, at p. 1401, italics added.)

However, violation of this branch of section 273a does require proof of criminal negligence. Criminal negligence involves a higher degree of fault than ordinary negligence. (*People v. Valdez* (2002) 27 Cal.4th 778, 788.) " ' "The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life *. . . or an indifference to consequences.*" ' " (*Ibid.*, italics added.) As is apparent by the italicized text, criminal negligence is not limited to conduct that is incompatible with human life, but rather it also includes conduct that amounts to "an indifference to the

consequences."**3** In the context of this case, the relevant *consequence* is endangerment to the "health" of the child.

While "[p]arents sometimes make mistakes that are detrimental to their children's health or that injure their children," "such parents will not be charged with and convicted of a violation of section 273a unless they are criminally negligent. [Citation.]" (*Deskin*, *supra*, 10 Cal.App.4th at pp. 1402-1403.)

Defendant did not just make a mistake here. Instead, her conduct was a reckless, gross, and culpable departure from the ordinary standard of due care. Defendant admitted smoking methamphetamine two hours before Officer Snyder arrived and, when he did arrive, there was a methamphetamine smoke haze in the air in the room in the apartment where children were present. The presence of the methamphetamine haze in the air from smoking it, the location of the methamphetamine in the syringe, and the syringe itself, supported the jury's finding that defendant willfully caused or permitted her children to be placed in a situation in which their health was endangered. The fact that the loaded syringe was hidden does not make a difference when it was accessible to the victim children. (See *People v. Perez* (2008) 164 Cal.App.4th 1462, 1473-1474 (*Perez*); *Little*, *supra*, 115 Cal.App.4th at p. 772.) The syringe was found in an unlocked bathroom in an unlocked cabinet under the sink, accessible to the children. As the court in *Perez* observed: "*It is undisputed that heroin and a syringe full of liquid were located in an unlocked drawer in a two-foot high end table in the entry room of the residence, just inside the front door, and that an uncapped, full syringe was found on top of the end table. All of these things were within a four-year-old child's reach* and were accessible to

---

**3** The trial court instructed the jury with CALCRIM No. 823, which pertains to misdemeanor child abuse. In defining criminal negligence, the trial court properly described the acts necessary for criminal negligence: "The person's acts amount to disregard for human life *or indifference to the consequences* of his or her acts." (Italics added.)

[the child], who had to pass through the entry room to get to her bedroom. Heroin was also found in Perez's bedroom, in plain view, on a dresser that was about four feet tall. [The child] testified that she had gone into Perez's room to see his bird. The jury could have reasonably concluded that leaving drugs and drug paraphernalia in plain view and/*or within easy access of a four-year-old child placed that child at unreasonable risk of her personal safety*." (*Perez*, at p. 1473, italics added.)

Likewise, here the syringe loaded with methamphetamine was in a location accessible to the children. But unlike *Perez*, the youngest child here was 10 years old and the others were teenagers -- much more capable of finding and obtaining their mother's drugs.

Defendant focuses myopically on the danger presented to the 10 year old, presumably because Officer Snyder was asked to offer an opinion about the risk of serious injury only as to that child. (See, *ante*, fn. 1.) However, there were three other children and the information did not allege a specific victim. Under the theory advanced by the prosecutor in closing argument, all of the children were endangered, not just the 10 year old.

Defendant argues that the evidence 0.02 milliliters of methamphetamine would cause serious injury is lacking. However, we review for evidence supporting a finding that the "health" of any of the children might be endangered, not just evidence of the risk of injury. And reversal on grounds of insufficient evidence is unwarranted unless the evidence is not sufficient to support a conviction under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*).) Officer Snyder testified about how methamphetamine affects people in general, including an increase in pulse rate. In Officer Snyder's experience, methamphetamine causes elevated pulse rates as high as 160 to 170. It cannot be seriously argued that the ingestion of methamphetamine by any means by any person -- child or adult -- does not endanger that person's health. Indeed,

defendant at least acknowledges that "under some circumstances," methamphetamine "would be potentially harmful to the health of a child."[4]

Defendant contends that it is "highly unlikely that the youngest, and most vulnerable of the children due to body weight, could have injected the drug in such a manner as to pose a legitimate risk of overdosing." This argument fails to persuade for a number of reasons. First, the argument ignores the three teenage victims. Second, the youngest child was not an infant or toddler. We see nothing in the record to suggest the 10-year-old child could not have self-injected. Third, as we have noted, an overdose or serious injury is not required for misdemeanor child endangerment. The prosecution needed only to prove that the "health" of the child "may" be endangered. (Pen. Code, § 273a, subd. (b).) Indeed, by exposing her children to drug use, defendant demonstrated her approval of such conduct and impliedly encouraged the children to engage in such conduct themselves. (See *In re Rocco M*. (1991) 1 Cal.App.4th 814, 825 [Leaving controlled substances where the child could access them created a "substantial risk" under Welfare and Institutions Code section 300, subdivision (b), that the child would ingest drugs when there was nothing to prevent the child from succumbing to the temptation to ingest them.].) Storing the loaded syringe in a place accessible to the children provided them with the opportunity and temptation to try out methamphetamine for themselves.

---

[4] While acknowledging the potential harm to a child, defendant argues that "other substances typically found in the household, like alcohol and chemicals, are similarly harmful if ingested, yet the presence of such substances would not warrant a child endangerment conviction." Setting aside the fact that the possession of methamphetamine is illegal and the possession of alcohol and cleaning fluids is not, we note that the children here were presumably old enough to know not to drink chemicals and other cleaning fluids. Furthermore, whether the storage of alcohol and cleaning fluids might serve as the basis of a child endangerment charge under some circumstance, it is not before us.

## II.  Opinion Evidence Regarding the Dangerousness of Methamphetamine

Defendant next contends the trial court erroneously permitted Officer Snyder to testify as an expert when he was not qualified to do so and erroneously allowed him to give an inappropriate expert opinion.  We disagree.

### A.  Background

Officer Snyder testified that he had served as a medic and emergency medical technician (EMT) in the Air Force after a six-month military course.  He also said he is currently an EMT.  He had attended 100 hours of training at the police academy, which included training in identifying controlled substances and dangerous situations for children.  He had been an officer for 32 months.

Based on Officer Snyder's EMT training, the prosecutor asked whether Officer Snyder had any knowledge of the harm to a child from exposure to methamphetamine.  Defense counsel objected, arguing the question called for a legal conclusion.  The trial court overruled the objection, but then asked counsel to approach the bench when defense counsel asked to voir dire.  After a bench conference, the prosecutor asked Officer Snyder about his EMT training which Officer Snyder described as follows:  "Training consists of approximately almost two months worth of, you know, common medical practices, blood pressure, take blood, put IVs in, I am going to take the national registry, that is actually taken by any one of the EMTs or technicians, and then after that we took a series of nursing aide and assistance classes on doing -- giving care to patients in the hospital for either long term or short term and E.R. as well."  Officer Snyder explained that he had also been trained on the effects of medications and drugs, including methamphetamine.  He testified that normal use of methamphetamine by people can result in violent behavior, high blood pressure, and high pulse rates.  He explained that he has seen pulse rates in the 160s and 170s.  The prosecutor asked whether Officer Snyder had a "base knowledge as what would happen to a child if a child consumed

9

methamphetamine," and Officer Snyder said he did.  The prosecutor then offered Officer Snyder as an expert "on the basic effects of methamphetamine."

On voir dire by defense counsel, Officer Snyder acknowledged he had not conducted studies or published papers where controlled substances are administered and the effects on the person's biology, including a child, had been measured.  His training regarding the effects of methamphetamine on the body was from the police academy.  Defense counsel objected to Officer Snyder testifying as a medical expert based on his lack of studies and training on methamphetamine.  The court told the prosecutor it would allow him to ask additional questions, but then called another bench conference.  Thereafter, the direct examination of Officer Snyder continued.

The prosecutor then asked Officer Snyder whether based on his training and experience, he had an opinion "as to how methamphetamine would [a]ffect a ten-year-old child."  Officer Snyder answered, "It would result[] in serious injury," including a potential heart attack or panic attack.  Officer Snyder said that as a police officer, he had observed minors under the influence of methamphetamine and also observed minors who had overdosed on the drug.

On cross-examination, Officer Snyder acknowledged he had not conducted studies on whether the amount of methamphetamine in defendant's syringe by itself creates a substantial risk of death or organ failure in children.  He stated he had not arrested adults with alcohol in the presence of children, but acknowledged that alcohol could cause death or serious injury to a child.  Officer Snyder also acknowledged that beauty and cleaning supplies contained chemicals which, if consumed by children, could cause death or injury.

Later, outside the presence of the jury, defense counsel noted for the record that he had objected earlier to the court allowing Officer Snyder to give his "quasi medical opinion" on the effects of methamphetamine on a child on the ground that there was an inadequate foundation for the opinion.  The court said it had determined that Officer

10

Snyder had qualified as an expert and that defense counsel's objection went "to the weight as opposed to the admissibility" of Officer Snyder's opinion.

## B. Analysis

"Evidence Code section 720 provides that a person may testify as an expert 'if he has special knowledge, skill, experience, training, or education sufficient to qualify him,' (*id.*, subd. (a)) which 'may be shown by any otherwise admissible evidence, including his own testimony.' (*Id.*, subd. (b).) The trial court's determination of whether a witness qualifies as an expert is a matter of discretion and will not be disturbed absent a showing of manifest abuse. [Citation.] ' "Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility." ' [Citation.]" (*Bolin*, *supra*, 18 Cal.4th at pp. 321-322.) "We will find error regarding a witness's credentials as an expert only if ' " "evidence shows that a witness *clearly lacks* qualifications as an expert . . . .' " ' " (*People v. Jones* (2012) 54 Cal.4th 1, 57.)

The record reflects that Officer Snyder was qualified to offer his opinion on the basic effects of methamphetamine use and on the effects of methamphetamine ingestion by a 10-year-old child based on his training in the academy, EMT training, and his experience and knowledge as an officer, including his observations of minors under the influence of methamphetamine and who overdosed on the drug. That he did not have any training concerning measuring the effects on a person's biology or on the necessary quantity of methamphetamine to pose a substantial risk to children went to the evidentiary weight of his testimony. (*Bolin*, *supra*, 18 Cal.4th at pp. 321-322.) We find no abuse of discretion.

In any event, any error was harmless. Defendant was convicted of misdemeanor child endangerment, not felony child endangerment which requires that defendant's act be done under circumstances or conditions likely to produce great bodily injury or death. As we have noted, all that was required to prove misdemeanor child endangerment was

11

that defendant's conduct put the children in a situation where their health may be endangered. Officer Snyder's testimony went more to the prosecutor's attempt to establish felony child abuse than the lesser included misdemeanor. Even without Officer Snyder's opinion about the effects of methamphetamine on a 10-year-old child, for the reasons we have already discussed, the jury could have reasonably found that a syringe loaded with methamphetamine, stored in an unlocked cabinet, and defendant's use of methamphetamine two hours before with the haze in the air in the same room where the children were present, presented an environment for all four of her children, one of whom was pregnant, where their health might have been endangered.

### III. The Prosecution's Attractive Nuisance Argument

Defendant contends the trial court prejudicially erred in allowing the prosecutor to argue evidence not presented to the jury and permitting the prosecutor to argue an "attractive nuisance" theory, a legal principle inapplicable to child endangerment. We disagree.

During closing argument, the prosecutor recounted the following *without objection*: "And in law school we talked about the principle called an *attractive nuisance*. And means being kids, people, are drawn to these things that are dangerous to them. And needles just happen to be one of those things. They're cool, they're sharp, kids -- when they come across that stuff, play with them. [¶] My niece her favorite thing in her will doctor [*sic*] medical kit is the needle. Now, fortunately that's just a toy, but when the child comes across the real thing, they don't know better to not poke your finger on it. They don't know not to depress the plunger." (Italics added.)

Shortly thereafter, the prosecutor again used the language "attractive nuisance": "Now, the defense will come up here and argue that, well, it's no different than household cleaners or alcohol or anything that is bad for a child, but there is a difference because we're not talking about a situation where children are not going to go around and

12

eat the Clorox.  They're not going to drink bleach.  That's not an *attractive nuisance*.

What we have here --"  (Italics added.)

At this point, defense counsel objected, arguing " 'attractive nuisance' " was "not the law of the case."  The prosecutor retorted that that was not a "legal basis" for an objection.  The court overruled defense counsel's objection.  The prosecutor then argued, "You've got this neat, sharp little thing that kids are going to be attracted to."

The trial court instructed the jury that the law was as given in the instructions and not as commented upon by the attorneys.  And that if anything the attorneys said conflicted with the court's instructions, the jury was to follow the court's instructions. Further, the jury was instructed that what the attorneys said was not evidence.  We presume the jury followed the trial court's instructions.  (*People v. Stitely* (2005) 35 Cal.4th 514, 559.)

Moreover, in context, the prosecutor was using the language "an attractive nuisance" to refer to "a child's natural sense of curiosity" (*Perez*, *supra*, 164 Cal.App.4th at p. 1474), giving an example of a common experience with children by referring to his niece.  The jury was never instructed on "attractive nuisance" and the prosecutor never explained in legal terms the "attractive nuisance" tort law doctrine.[5]  The jury could not have been confused about the prosecutor's meaning.  We find no error.

---

[5]  The Restatement Second of Torts, section 339, provides:  "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if  [¶]  (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and  [¶]  (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and  [¶]  (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and  [¶]  (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as

13

**DISPOSITION**

The judgment is affirmed.

                                                            MURRAY        , J.

We concur:

      BLEASE       , Acting P. J.

      BUTZ         , J.

---

compared with the risk to children involved, and  [¶]  (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.”

  “*Rowland v. Christian* (1968) 69 Cal.2d 108 . . . abolish[ed] distinctions in the duty of care owed by a landowner to trespassers, licensees, or invitees” and “ ‘the liability of a possessor of property to trespassing children is no longer limited by the conditions set out in Restatement Second Torts, § 339 . . . but is governed by Civil Code, sec[t]ion 1714, which imposes general liability on every person for injuries occasioned to others by want of ordinary care in the management of his property.’ ” (*Silva v. Union Pacific Railroad Co*. (2000) 85 Cal.App.4th 1024, 1028.)