Filed 10/26/15  P. v. Foster CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B258337 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA409665) |
| v. | |
| SEAN ROBERT FOSTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed in part, reversed in part, and remanded.

H. Russell Halpern for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jason Tran, Supervising Deputy Attorney General, Brendan Sullivan, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Sean Robert Foster of possession for sale of cocaine base (Health & Saf. Code, § 11351.5[1]) (count 1), possession of a controlled substance (cocaine) (§ 11350, subd. (a)) (count 2), possession for sale of a controlled substance (methamphetamine) (§ 11378) (count 3), two counts of possession for sale of phencyclidine (counts 5 and 20) (§ 11378.5), and four counts of possession of a firearm by a felon (counts 7, 10, 13, and 16) (Pen. Code, § 29800, subd. (a)(1)). With respect to counts 1, 3, and 5, the jury found true the allegation that defendant was personally armed with a firearm. (Pen. Code, § 12022, subd. (c).) Defendant admitted that he suffered a prior felony conviction alleged under the "Three Strikes" law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The trial court sentenced defendant to 13 years, four months in state prison. On appeal, defendant contends that insufficient evidence supports his drug possession convictions. We asked the parties to submit supplement letter briefs addressing whether the trial court erred in sentencing defendant on count 2. We reverse defendant's sentence and remand the matter to the trial court for resentencing. We otherwise affirm.

## BACKGROUND

### I.  The January 12, 2013, Incident (Count 20)

On January 12, 2013, Los Angeles Police Department Officer Kenneth Ahn responded to a radio call concerning a disturbance at 5206 Latham Street. When Officer Ahn and his partner arrived at the scene, there were several people in the street and on the sidewalk.

The officers contacted defendant, who was standing on the sidewalk, and asked if the disturbance was ongoing. Defendant said something to the effect of "everything is all right, everyone is going to go, and everything is going to be okay." Defendant informed

---

[1]     All statutory citations are to the Health and Safety Code unless otherwise noted.

the officers that he and his wife lived across the street from 5206 Latham Street at 5203 Latham Street.

Officer Ahn asked defendant if anyone other than defendant's wife was in their home. Defendant said that only his wife was home. Prior to entering the home to search it pursuant to a lawful order, Officer Ahn ordered anyone inside to exit the residence. About five people exited the residence.

Officer Ahn and other officers searched defendant's home and found several stacks of money. The officers recovered $99 from the kitchen consisting of one $20 bill, two $5 bills, and 69 $1 bills; $220 from the rear bedroom consisting of five $20 bills, 15 $5 bills, and 45 $1 bills; and $221 from a bottle that apparently was in the rear bedroom consisting of four $20 bills, five $10 bills, 11 $5 bills, 16 $2 bills, and four $1 bills. Officer Ahn believed that the money was related to narcotics sales—cash in small denominations was necessary in the drug trade. In one of the bedrooms, Officer Ahn found defendant's identification and social security cards and mail in defendant's name addressed to him at 5203 Latham Street.

Officer Ahn did not find any narcotics inside the house, but found a bottle containing a liquid that resembled phencyclidine (PCP or "angel dust," a banned substance) in a refrigerator in the backyard. A Los Angeles Police Department criminalist determined that the bottle contained 68 milliliters of phencyclidine. Los Angeles Police Department Officer Pablo Soto testified that 68 milliliters of phencyclidine would produce "a lot" of doses and opined that such an amount was possessed for sale

Officer Ahn also found a backpack behind a couch in the backyard that contained two black plastic bags. The first bag contained a number of vials, a liquid dropper, an Altoid can, playing cards, and a clear plastic bag containing a white powdery substance. The second bag contained a blue glove, an Altoid can, a plastic bag with a white powdery substance, and a silver spoon. One of the bags contained a can of lighter fluid. Officer Ahn searched defendant and recovered $705 from defendant's pants pockets consisting of 12 $20 bills, five $10 bills, 36 $5 bills, and 235 $1 bills.

3

**II.     The March 29, 2013, Incident (Counts 1, 2, 3, 5, 7, 10, 13, and 16)**

During the afternoon on March 29, 2013, Los Angeles Police Department Detective Erbie Phillips monitored the activity at a single family house at 1268 East 49th Street in preparation for the service of a search warrant.  He was looking for pedestrian activity that would indicate narcotic activity.  During a 50-minute period, the detective saw three or four people approach the residence on foot and walk down the driveway to the backyard.  After a couple of minutes, those people walked out of the backyard, up the driveway, and away from the residence.  Detective Phillips believed the people had purchased drugs.

A police informant was given two $5 bills and sent to the location to attempt to "buy something."  Five minutes after entering the property, the informant returned with an off-white solid that appeared to be cocaine base.

At some point, other police officers arrived to serve the search warrant.  They knocked on the back door.  Michael Berry opened the door.  No other persons were inside the house.  The police searched the house.  In the living room, they found two bindles of an off-white substance that appeared to be cocaine base, two baggies that contained a white substance that appeared to be cocaine, a rifle, two revolvers, and $128 consisting of one $20 bill, two $10 bills, 14 $5 bills, and 18 $1 bills.  The cash included the two $5 bills the police had given the informant to purchase drugs.

In one of the bedrooms, the police found a baggie of a crystalline substance that resembled methamphetamine and a semi-automatic handgun.  Underneath the handgun was mail addressed to Chico Foster, defendant's brother, at 1829 West Greenleaf in Anaheim.  In another bedroom, the police found marijuana, a scale, 33 baggies, and $317 consisting of six $20 bills, two $10 bills, 14 $5 bills, and 107 $1 bills.  In the kitchen, the police found glass vials that contained a liquid substance that appeared to be phencyclidine and $71 consisting of three $10 bills, two $5 bills, and 31 $1 bills.

The police arrested defendant in the front yard after he exited the house and searched him.  The police recovered from defendant's right front pants pocket $368 consisting of 13 $20 bills, seven $10 bills, five $5 bills, and 13 $1 bills.  Defendant did

4

not have any drugs or drug paraphernalia on him. Defendant's brother, who had arrived at the house during the surveillance and remained for 20 to 25 minute before driving away, also was arrested and searched. The police recovered from him $75[2] and a "pay-owe" sheet—a tally that drug dealers use to track credit extended for narcotics purchases. Defendant's brother did not have any narcotics or narcotics paraphernalia on him. The police searched Berry and recovered $160 consisting of two $50 bills and three $20 bills. Berry did not have any narcotics or drug paraphernalia on him.

Testifying as an expert, Officer Soto opined that the cocaine base, methamphetamine, and phencyclidine were possessed for sale based on the amount and packaging of the drugs and the fact that there were loaded firearms in close proximity to the drugs. He further opined that the cocaine was possessed for personal use based on the amount of cocaine. According to Officer Soto, most drug users purchase drugs with bills of small denominations—i.e., $1, $5, and $10. He testified if a person was arrested "inside a home with narcotics" and possessed a large number of $1 bills, the $1 bills were the revenue from narcotics sales.

Officer Soto testified that drug dealers do not let "just anybody" in a house from which they sell drugs. Drug dealers commonly are robbed, and so want to protect their merchandise by controlling those with access to it. Whether a person was a drug dealer's relative would be a factor in gaining access.

A Los Angeles Police Department criminalist analyzed the substances recovered in connection with the search warrant served at 1268 East 49th Street. The substances tested positive for cocaine base, cocaine, methamphetamine, and phencyclidine.

The parties stipulated that defendant had been convicted of a felony prior to the date of the alleged offenses in this case.

---

**2** Officer Soto testified that the $75 consisted of one $20 bill, one $10, and 35 $1 bills. We note those bills total $65 and not $75.

**DISCUSSION**

## I. Sufficiency of the Evidence

The jury convicted defendant of five drug possession offenses—possession for sale of cocaine base, possession a controlled substance (cocaine), possession for sale of a controlled substance (methamphetamine), and two counts of possession for sale of phencyclidine. Without specifying the conviction or convictions to which his argument applies, defendant contends that "there was insufficient evidence to support a conviction." Then, defendant cites several cases in which appellate courts have held that evidence was insufficient to support a drug possession offense but does not explain how any of the cases applies to this case. Notwithstanding these failings in defendant's brief, we liberally construe defendant's argument as applying to each of his drug possession convictions and as asserting the argument that there is insufficient evidence that he possessed the drugs at issue. Sufficient evidence supports the convictions.

### A. *Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 [82 Cal.Rptr.3d 323, 190 P.3d 664].) We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].)" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's

6

verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.]" (*People v. Zamudio, supra,* 43 Cal.4th at pp. 357-358.) In determining whether substantial evidence supports a conviction, "we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses." (*People v. Little* (2004) 115 Cal.App.4th 766, 771, citing *People v. Jones* (1990) 51 Cal.3d 294, 314.)

### B.    *Application of Relevant Principles*

"The elements of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence and narcotic character of the drug. [Citations.] Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. [Citation.] The elements of unlawful possession may be established by circumstantial evidence and any reasonable inferences drawn from such evidence." (*People v. Newman* (1971) 5 Cal.3d 48, 52, disapproved on another ground by *People v. Daniels* (1975) 14 Cal.3d 857, 862.)[3] "Proof of opportunity of access to a place where narcotics are found

---

[3]    "Possession" was defined for the jury as follows:

"There are two kinds of possession: actual possession and constructive possession.

"Actual possession requires that a person knowingly exercise direct physical control over a thing.

"Constructive possession does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons.

"One person may have possession alone, or two or more persons together may share actual or constructive possession."

7

will not, without more, support a finding of unlawful possession. [Citation.] But the necessary elements (that the accused exercised dominion and control over the drug with knowledge of both its presence and its narcotic character) may be established by circumstantial evidence and any reasonable inferences drawn from such evidence; and neither exclusive possession of the premises nor physical possession of the drug is required. [Citations.]" (*People v. Harrington* (1970) 2 Cal.3d 991, 998 superseded on other grounds as stated in *People v. Coffman* (2004) 34 Cal.4th 1, 116-117.)

### 1. The January 12, 2013, Incident (Count 20)

The evidence adduced in support of count 20 is sufficient to support the jury's finding that defendant possessed the phencyclidine found in the backyard refrigerator. Defendant admitted to the police that he resided in the house at 5203 Latham Street. Mail in his name at the 5203 Latham Street address was found in the residence. When the officers searched defendant's house, they found 68 milliliters of phencyclidine, an amount Officer Soto testified was possessed for sale. The officers also found stacks of money in various places consisting of numerous bills in small denominations. Officer Ahn testified that he believed that the money was related to narcotics sales because cash in small denominations was necessary in the drug trade. Defendant was found in possession of $705 in small bills—i.e., bills consistent with Officer Ahn's description of the denominations used in narcotics sales. From such evidence, a juror reasonably could conclude that defendant was involved in the sale of phencyclidine, that he had dominion and control over the bottle in his backyard refrigerator that contained phencyclidine, that he knew of the drug's presence, that he knew of the drug's character, and that he thus possessed the phencyclidine. (*People v. Newman, supra,* 5 Cal.3d at p. 52.)

### 2. The March 29, 2013, Incident (Counts 1, 2, 3 and 5)

The evidence adduced in support of counts 1, 2, 3, and 5 is sufficient to support the jury's finding that defendant possessed the cocaine base, cocaine, methamphetamine, and phencyclidine found in the house at 1268 East 49th Street. The police believed that

8

drugs were being sold from the house and had the house under surveillance. A police informant purchased cocaine base from the house. The police searched the house and found indicia of drugs and drug sales. They found cocaine base, cocaine, methamphetamine, and phencyclidine. The police found a rifle and three handguns and a large amount of money in small denominations. Mail addressed to defendant's brother was found in one of the bedrooms. When defendant's brother was arrested after he left the property, he was in possession of a "pay-owe" sheet.

The police arrested defendant in the front yard after he exited the house. A search of defendant uncovered $368 in small bills—i.e., bills consistent with Officer Ahn's description of the denominations used in narcotics sales. According to Officer Soto, if a person was arrested "inside a home with narcotics" and possessed a large number of $1 bills, the $1 bills were the revenue from narcotics sales. He further testified that drug dealers do not let "just anybody" in a house from which they sell drugs because they commonly are robbed. The evidence adduced in connection with the January 12, 2013, incident established that defendant was a drug dealer. As with the January 12, 2013, incident, the home contained narcotics and small denominations of cash. From the evidence, a juror reasonably could conclude that defendant was involved with his brother and Berry in the sale of cocaine base, methamphetamine, and phencyclidine from the house at 1268 East 49th Street; that he had dominion and control over those drugs and the cocaine found in the house; that he knew of the drugs' presence; that he knew of the drugs' character; and that he thus possessed the cocaine base, methamphetamine, phencyclidine, and cocaine. (*People v. Newman, supra,* 5 Cal.3d at p. 52.)

## II.    Sentencing

Defendant was charged in count 2 of the amended information with possession for sale of a controlled substance (cocaine) in violation of section 11351. The amended information also alleged that in the commission of that offense, defendant was personally

9

armed with a firearm in violation of Penal Code section 12022, subdivision (c).[4]  The jury found defendant guilty on count 2 of the lesser included offense of possession of a controlled substance (cocaine) in violation of section 11350, subdivision (a).  Because a violation of section 11350, subdivision (a) is not an offense listed in Penal Code section 12022, subdivision (c), the verdict form properly did not give the jury an opportunity to make a finding under Penal Code section 12022, subdivision (c) with respect to the lesser included offense.  At sentencing, however, the trial court imposed and stayed a four year term under Penal Code section 12022, subdivision (c) with respect to defendant's section 11350, subdivision (a) conviction.  At the same time, the trial court struck the Penal Code section 12022, subdivision (c) allegation with respect to counts 3 and 5.  We asked the parties to submit supplemental letter briefs addressing whether the trial court erred in sentencing defendant on count 2 and whether we should remand the matter for resentencing because the trial court may not have stricken the Penal Code section 12022, subdivision (c) allegations as to counts 3 and 5 if it knew it could not impose a Penal Code section 12022, subdivision (c) enhancement on count 2.  Defendant did not file a letter.  We agree with the Attorney General that the trial court erred in sentencing on count 2 and that the matter must be remanded for resentencing.  Accordingly, we reversed defendant's sentence and remand the matter for resentencing.

---

**4**    Penal Code section 12022, subdivision (c) provides, "Notwithstanding the enhancement set forth in subdivision (a), a person who is personally armed with a firearm in the commission of a violation or attempted violation of Section 11351, 11351.5, 11352, 11366.5, 11366.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for three, four, or five years."

## DISPOSITION

Defendant's sentence is reversed and the matter is remanded for resentencing.  On remand, the trial court may impose a Penal Code section 12022, subdivision (c) enhancement on either count 3 or count 5.  The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:



TURNER, P. J.



KRIEGLER, J.

11